# IN THE COURT OF APPEALS OF IOWA

No. 24-0789
Filed January 9, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**OLIJUAN DESHAWN ABRAHAM,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Brandon Schrock,

Judge.

        A defendant appeals his sentence following his guilty plea for participation

in a riot.  **AFFIRMED.**

        Des C. Leehey, Cedar Rapids, for appellant.

        Brenna Bird, Attorney General, and Joshua A. Duden, Assistant Attorney

General, for appellee.

        Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**SANDY, Judge.**

Olijuan Deshawn Abraham appeals the district court's sentencing order. After he pleaded guilty to participating in a riot, he was sentenced to a five-year indeterminate prison term. Abraham asserts that the trial court improperly considered unproven offenses or conduct in its sentencing. Because we find no abuse of discretion by the district court, we affirm.

## I.      Background Facts and Proceedings

M.S., the victim, began his new year in 2024 beaten and hospitalized. He had scrapes throughout his body and significant structural damage to his nose and jaw. These injuries were sustained when, minutes after the beginning of the new year, a group of men knocked him to the ground and kicked him repeatedly.[1] Beyond the physical effects of these injuries, M.S. suffered the psychological impact of the loss of his burgeoning athletic career as a collegiate runner for the University of Iowa. This "callous and cowardly" attack was captured by surveillance video. Based on that video, law enforcement identified Abraham as part of the group responsible, an identification corroborated by his parole officer. Abraham never denied being present at the scene, but he consistently denied assaulting M.S.

Abraham was initially charged with willful injury causing bodily injury and participation in a riot. In Abraham's plea of guilty to participation in a riot, he admits to having "willingly join[ed] in an assembly of 3 or more persons in a violent manner

---

[1] The minutes do not provide a clear account of the number of people who were in the assaulting group. M.S. claimed that he initially observed five to seven individuals in the group but estimated that eight to twelve participated in the assault. Abraham stated that the group consisted of at least three people.

to the disturbance of others and use[d] unlawful force." The State, per its plea agreement with Abraham, dismissed the willful injury charge. The validity of the plea agreement remains unchallenged.

At sentencing, Abraham asked for a suspended sentence and three years' probation in a halfway house. But the State and pretrial sentencing investigator recommended prison. The State cited Abraham's prior criminal history, inconsistent statements, and the victim impact statement as support for a period of incarceration. Abraham highlighted his prior employment, acceptance of responsibility, and minimal involvement in the riot as mitigating factors making probation appropriate.

The district court imposed the challenged prison term based on the following:

> the arguments of counsel, viewing the court record, reviewing the victim impact statement filed by the State on today's date, and the letter of support filed by the defense on April the twenty-fourth . . . [and] the entirety of the court file, including those pieces of information contained within the presentence investigation report [(PSI)], excluding any unadjudicated offenses, and those sentences that were redacted from the report at the defense's request.[2]

The district court also stated that it "considered the nature and circumstances of the offenses and history and characteristics of [Abraham], including [his] age, the

---

[2] Contrary to the State's assertion, we do not view Abraham as challenging the factual basis of his guilty plea. As Abraham confirms in his reply brief, we interpret his appeal as challenging his sentence only. As such, Abraham has established good cause to appeal following his guilty plea, and we have jurisdiction over his appeal. *See State v. Damme*, 944 N.W.2d 98, 105 (Iowa 2020). No challenge at the time of sentencing is necessary to establish good cause for appeal. *State v. Gordon*, 921 N.W.2d 19, 22 (Iowa 2018).

prior confirmed criminal record, the facts and circumstances of this particular case, the recommendation of both parties, and the [PSI]."

## II. Standard of Review

Because the sentence is within the statutory limits, "an abuse of discretion or some defect in the sentencing procedure" must be found to reverse it. *State v. Wilbourn*, 974 N.W.2d 58, 65 (Iowa 2022) (citation omitted). There is a strong presumption of rationality that Abraham must overcome; he must show that the sentence was "clearly untenable or to an extent clearly unreasonable." *Id.* (citation omitted). One way a district court abuses its discretion is through the "consideration of inappropriate matters." *Damme*, 944 N.W.2d at 106 (citation omitted).

## III. Discussion

Abraham asserts that the trial court improperly considered unproven offenses or conduct. Under Iowa Code section 723.1 (2024), a riot includes "any use of unlawful force or violence . . . against another person" by a group of "three or more persons assembled together in a violent and disturbing manner." To be convicted under section 723.1, a person must have been found to "join[ed] in or remain[ed] a part of a riot, knowing or having reasonable grounds to believe that it is such." As to whether mere presence at the scene of a riot is enough to impose criminal liability, the answer under Iowa law is no. *Williams v. Osmundson*, 281 N.W.2d 622, 625 (Iowa 1979). But "[t]hat [the defendant] does not also participate in personal injury or property damage committed by another does not relieve him from liability for riot." *Id.*

The issue Abraham raises "is simply one of the sufficiency of the record to establish the matters relied on." *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000) (citation omitted) (holding that defendant's prior significant traffic violation history was sufficiently established and appropriately considered in sentencing). Abraham principally "argues that the victim's injuries and details of the attack during the riot exceed the scope of his plea."

A district court when sentencing evaluates "the nature of the offense, attending circumstances, defendant's age, character, and propensities[,] and chances of his reform." *State v. Headley*, 926 N.W. 2d 545, 550 (Iowa 2019) (alteration in original) (citation omitted). But these are not the only considerations the court may weigh. *See id.* (holding the court could properly weigh presentence risk assessment in sentencing); *State v. Guise*, 921 N.W.2d 26, 29 (Iowa 2018) (holding due process rights not violated by consideration of risk assessment). The district court may also assess any "such other factors as are appropriate." Iowa Code § 907.5(1). The factors must promote the goal of "maxim[izing] opportunit[ies] for the rehabilitation of the defendant and protection of the community from further offenses." *Id.*

The fear of undue prejudice does not evaporate with adjudication. Thus, when sentencing a defendant, district courts can only consider proven facts or charged offenses, any other offenses considered require sufficient factual substantiation of guilt or an admission by the defendant. *Guise*, 921 N.W.2d at 30. The district court's awareness of uncharged offenses is not enough to show an abuse of discretion: "there must be an affirmative showing that the trial judge *relied* on the uncharged offenses." *Id.* (emphasis added) (citation omitted); *see State v.*

*Sailer* 587 N.W. 2d 756, 763–64 (1994) (holding no affirmative showing of reliance was established by defendant).

Abraham is asking us to infer that evidence presented by the State, through its victim impact statement, argument, and minutes of testimony on the injuries to M.S. held significant—and from his perspective undue—weight in the court's sentencing. We are unable to draw that inference. *See State v. Formaro,* 638 N.W. 720, 725 (Iowa 2002) ("We will not draw an inference of improper sentencing considerations which are not apparent from the record."). Abraham cannot affirmatively show evidence that contradicts the statement by the district court that they only viewed the record within the context of establishing the unlawful force required for "rioting."

The district court stated all the findings that it relied upon in sentencing Abraham: "the nature and circumstances of the *offenses* and history and characteristics of [Abraham], including [his] age, the prior confirmed criminal record, the facts and circumstances of this particular case, the recommendation of both parties, and the [PSI]." (emphasis added). While the use of the plural *offenses* as opposed to *offense* by the court in its soliloquy does seem incongruent, the district court expressly stated in the preceding sentence that it was "excluding any unadjudicated offenses" in its sentencing decision.

And the court did not rely on unproven offenses when it considered the impact on the victim. "[A]ny use of unlawful force or violence" "against another person" is an element of rioting. Iowa Code § 723.1. M.S.'s injuries were a direct result of this riot's unlawful force or violence, and "a defendant does not join in a

riot or remain a part of a riot unless he conducts himself in a violent manner."

*Osmundson*, 281 N.W.2d at 624.

Similarly, there is no evidence of improper reliance in the court's finding that prison was appropriate in the interest of public safety. This finding is supported by Abraham's prior criminal record and recommendations by the State and PSI. Specifically, the court found that:

> Mr. Abraham, it appears that since you've been a man incapable of making decisions for yourself, you routinely and consistently made the wrong decisions that have landed you in and out of criminal trouble, either as a juvenile or adult . . . . You were [at the time of the riot] already on parole for a forcible felony, and when you're on parole for a forcible felony you have to walk a perfect line. So, my hope is that you can learn what you need to learn so that you don't have this revolving door of in and out of the criminal justice system.

This statement belies Abraham's contention that the lengthier sentence relied upon the assault on M.S. Instead, it speaks to his violation of parole as support for the court finding probation inappropriate.

## IV. Conclusion

The record before us does not support Abraham's contention that the sentence imposed was improper. Because we find the district did not abuse its discretion, we affirm.

**AFFIRMED.**