WALNUT BREWERY, INC. d/b/a Rock Bottom Brewery, Petitioner–Appellant,

v.

IOWA DEPARTMENT OF COMMERCE–ALCOHOLIC BEVERAGES DIVISION, Respondent–Appellee.

No. 08–1894.

Court of Appeals of Iowa.

Oct. 7, 2009.

John Fatino and Nicholas Cooper of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and John Lundquist, Assistant Attorney General, for appellee.

Heard by VAITHESWARAN, P.J., MANSFIELD, J., and MILLER, S.J.*

MANSFIELD, J.

This case presents the question whether the Iowa Alcoholic Beverages Division's (ABD) legal interpretations of Iowa Code sections 123.49(2)(h) and 123.49(3) should be sustained. The ABD interpreted those statutes as requiring the individual *who delivers* an alcoholic beverage to a customer to ascertain personally that the customer is of legal age, regardless of any efforts previously made by the person *who took the order* from that customer. As stated by the ABD, "[E]ach individual server is responsible under Iowa law to ascertain a person's age before serving or providing an alcoholic beverage to that person." Because we believe the ABD's interpretation

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2009).

of Iowa law is illogical, we reverse and remand for further proceedings.

## I.  Background Facts & Proceedings.

On March 10, 2007, employees of Rock Bottom Brewery in West Des Moines sold and served an alcoholic beverage to a nineteen-year-old customer, Audrey Pierce. On May 24, 2007, the city of West Des Moines sent a settlement agreement and consent order to Rock Bottom, which proposed a civil penalty of $1500 and a thirty-day liquor license suspension for a second violation of section 123.49(2)(h).[1] On June 18, 2007, Rock Bottom through its attorneys responded that it "was not willing to 'settle' this case, when [the] proposed Settlement is the maximum penalty [Rock Bottom] could incur." Rock Bottom requested a hearing before the ABD. *See* Iowa Code § 123.39(1)(a) (authorizing review in accordance with Iowa Code chapter 17A).

A hearing was held on August 21, 2007. The testimony indicated that prior to March 10, Pierce had frequented Rock Bottom several times with coworkers and friends. On the evening of March 10, Pierce and Andrea Johnston, who was of legal drinking age and a former employee of Rock Bottom, went to Rock Bottom and ordered beers from a Rock Bottom employee, Shawna Howard. Another employee, Amie Lauer, brought the beers to the table.

Subsequently, West Des Moines police officers arrived at Rock Bottom to do a "bar check." One of them, Ryan Purdy, saw Pierce with her beer. Based on her appearance, Purdy suspected Pierce might not be of legal drinking age. Officer Purdy and another officer approached Pierce and Johnston. Officer Purdy asked Pierce how old she was and whether she had identification. Pierce admitted she was only nineteen and claimed she did not have identification. Pierce also stated that she was not asked for identification when she ordered the beer. Officer Purdy cited Pierce for underage possession of alcohol. After determining that Lauer had served the beer, the officers also cited Lauer for selling or providing an alcoholic beverage to a person under the legal age in violation of section 123.49(2)(h). No effort was made by the West Des Moines police to verify Pierce's claim that she did not have identification with her. In addition, the beer was not removed from Pierce, and she finished it before leaving the establishment. Lauer's citation was later dismissed because she did not take Pierce's order for the beer.[2]

Howard testified that on numerous previous occasions she had waited on and requested identification from Pierce and Pierce had produced identification that established her to be of legal drinking age. On March 10, she recognized Pierce as a regular customer whom she had previously identified as being of legal drinking age; thus, she did not request identification that

---

1.  On June 14, 2006, a Rock Bottom employee served an underage person in violation of Iowa Code section 123.49(2)(h). On August 15, 2006, the local authority issued an order imposing a $500 civil penalty for the violation, which Rock Bottom did not appeal and paid. *See* Iowa Code § 123.50 (stating a first violation shall result in a $500 civil penalty and a second violation within a two year time period shall result in a liquor license suspension for thirty days and a $1500 civil penalty).

2.  The order of dismissal stated, "The plaintiff agrees to dismiss the charge of Providing Alcohol to an Underage Person . . . in violation of Iowa Code section 123.49, at the defendant's cost because a Rock Bottom Brewery employee other than the defendant took the underage person's order for an alcoholic beverage."

evening. Lauer testified that she had not previously waited on nor requested identification from Pierce, but had seen Pierce in Rock Bottom before that night and recognized her as a regular customer. She stated that she requests identification from a customer when taking an order and not when delivering drinks.

Other employees of Rock Bottom, Erin Lehman, Jennifer Ross, and Melissa Clark, testified that they had previously waited on and requested identification from Pierce, and Pierce had each time provided identification establishing her to be of legal drinking age. The employees all characterized Pierce as a regular customer. In contrast, Pierce testified that she did not, nor had she ever, possessed false identification. Pierce's roommate also testified that Pierce did not have false identification and she had never known Pierce to use false identification.

Evidence was also introduced demonstrating that Rock Bottom employees were required to attend a training program titled "ServSafe Alcohol" within sixty days of being hired and every three years thereafter. Rock Bottom has also hired an independent company to monitor compliance with its policy requiring employees to request identification from customers appearing under the age of forty. This company sends in customers who are over the age of twenty-one but appear under the age of thirty. If an employee follows the proper procedure and requests identification from the customer, the employee is given a green card. If an employee does not request identification, the employee is given a red card. Two red cards result in termination of the employee. After the March 10 incident, Rock Bottom employees also participated in "TIPS," a class sponsored by the West Des Moines Police Department.

On October 1, 2007, the administrative law judge (ALJ) issued a proposed decision. The ALJ, finding Pierce's testimony not to be credible, determined that prior to March 10, Pierce had misrepresented her age on multiple occasions by showing false identification when she ordered alcoholic beverages at Rock Bottom. The ALJ also made findings that Pierce was known as a regular customer at Rock Bottom and that, on March 10, Howard recognized Pierce as someone from whom she had previously requested identification and whom she had personally established was of legal drinking age. The ALJ also found that Pierce's appearance and demeanor were not inconsistent with that of someone over twenty-one years old. Lastly, the ALJ noted Lauer's testimony that she would have carded Pierce if she had taken the order, but did not do so because someone else (Howard) had taken the order. The ALJ concluded, "Under these circumstances, [Rock Bottom] should not be held liable for the sale of beer to Audrey Pierce on March 10, 2007." Thus, the ALJ's proposed order would have reversed the City of West Des Moines's intent to impose a thirty-day license suspension and a $1500 civil penalty for a second violation of Iowa Code section 123.49(2)(h).

On October 3, 2007, the administrator of the ABD decided *sua sponte* to review the proposed decision. On April 11, 2008, the administrator filed his order. While not questioning the ALJ's factual findings, the administrator concluded, in effect, that Lauer had a nondelegable legal duty to ascertain whether Pierce was of legal age before delivering a previously ordered beer to her. The administrator stated,

No matter how responsibilities are divided among a licensee's employees, each beverage server has an independent responsibility to reasonably act to ascertain the age of the patrons to whom the server is providing alcoholic bever-

ages. . . . [E]ach individual server is responsible under Iowa law to ascertain a person's age before serving or providing an alcoholic beverage to that person. The administrator also found that the affirmative defense in section 123.49(3) was not available to Rock Bottom for the same reason—namely, Lauer's failure to personally ascertain Pierce's age. As the administrator put it, "Because Pierce had never misrepresented her age directly to Lauer, the affirmative defense is not applicable to Lauer's actions." Thus, the administrator imposed a $500 civil penalty and suspended Rock Bottom's liquor license for thirty days.

On April 24, 2008, Rock Bottom filed a petition for judicial review challenging the administrator's decision.[3] On October 21, 2008, the district court affirmed the administrator's final decision. It noted that the administrator's interpretations of Iowa Code sections 123.46(2)(h) and 123.49(3) are entitled to deference and may only be reversed if illogical, irrational, or wholly unjustifiable. Regarding section 123.46(2)(h), the district court held the administrator's interpretation was "not unreasonable" because a "server could easily discharge their duty under section 123.49(2)(h) either by requesting identification themselves, or by verifying that the employee taking the order had already exercised such care."[4] Additionally, the district court found that the affirmative defense set forth in section 123.49(3) only absolves liability where the specific employee serving or supplying alcohol to a

patron is presented with a false identification after making inquiry to determine the patron's age. Since Pierce made no misrepresentation directly to Lauer, the affirmative defense did not apply. Rock Bottom appeals.

## II.  Standard of Review.

Our review is for correction of errors at law. Iowa R.App. P. 6.4 (2008); *Jim O. Inc. v. City of Cedar Rapids*, 587 N.W.2d 476, 478 (Iowa 1998). The Iowa Administrative Procedure Act governs the standards under which we review the district court's decisions on judicial review of agency action. Iowa Code ch. 17A; *Auen v. Alcoholic Bev. Div.*, 679 N.W.2d 586, 589 (Iowa 2004). "The agency action itself is reviewed under the standards set forth in section 17A.19(10)." *Auen*, 679 N.W.2d at 589. "We must apply the standards set forth in section 17A.19(10) and determine whether our application of those standards produce the same result as reached by the district court." *Id.* The legislature has clearly vested the interpretation of sections 123.49 and 123.50 with the agency. *See id.* at 590. Thus, the administrator's interpretations of the statutes at issue are entitled to deference and we may reverse only upon a finding the agency's interpretation was "irrational, illogical, or wholly unjustifiable." *Id.*

## III.  Analysis.

■ Rock Bottom asserts that it exercised reasonable care to ascertain whether

---

3.  On April 16, 2008, Rock Bottom filed an application for a stay pending judicial review with the administrator. Although the City of West Des Moines did not resist, the administrator denied Rock Bottom's request. On April 24, 2008, along with its petition for judicial review, Rock Bottom requested a stay pending judicial review, which the district court granted on May 5, 2008.

4.  Contrary to the district court, we do not read the administrator's ruling as allowing for the possibility that a server could simply verify that the order-taker had already checked identification. The administrator wrote, "[E]ach individual server is responsible under Iowa law to ascertain a person's age before serving or providing an alcoholic beverage to that person."

Pierce was of legal age and, thus, the administrator erred in finding a violation of Iowa Code section 123.49(2)(h). That section makes it unlawful for a liquor licensee to:

Sell, give, or otherwise supply any alcoholic beverage, wine, or beer to any person, knowing or failing to exercise reasonable care to ascertain whether the person is under legal age, or permit any person, knowing or failing to exercise reasonable care to ascertain whether the person is under legal age, to consume any alcoholic beverage, wine, or beer.

Iowa Code § 123.49(2)(h); *see also* Iowa Code § 123.3(19) (defining legal age as twenty-one years of age or more). Alternatively, Rock Bottom argues that it was entitled to the benefit of the affirmative defense set forth in section 123.49(3), which provides:

A person under legal age shall not misrepresent the person's age for the purpose of purchasing or attempting to purchase any alcoholic beverage, wine, or beer from any licensee or permittee. If any person under legal age misrepresents the person's age, and the licensee or permittee establishes that the licensee or permittee made reasonable inquiry to determine whether the prospective purchaser was over legal age, the licensee or permittee is not guilty of selling alcoholic liquor, wine, or beer to a person under legal age.

■ Generally, a licensee exercises reasonable care to ascertain a patron's age by "simply requiring patrons to furnish proof of age before the licensee serves them." *Jim O. Inc.*, 587 N.W.2d at 478. However, a licensee does not have to request identification when the age of the patron is known or reasonably beyond question. *Id.* Additionally, if a patron misrepresents his or her age and the licensee makes reasonable inquiry to determine the

age of the patron, there is no violation of section 123.49(2)(h). *See* Iowa Code § 123.49(3).

Rock Bottom argues that its policy of carding patrons who appear to be under forty years old when the orders are placed, while not requiring that process to be duplicated if a different person later delivers the beverages, complies with the statute. The administrator, on the other hand, concluded that "each individual server is responsible under Iowa law to ascertain a person's age before serving or providing an alcoholic beverage to that person."

We agree with Rock Bottom that the administrator's interpretation of the statutes is illogical. The statutes, especially section 129.49(3), do not require each individual employee who is involved in getting the drink to the customer to make personal efforts to ascertain the customer's age. Section 129.49(2) simply requires the licensee and the licensee's employees to exercise "reasonable care." We believe "reasonable care" could, potentially, involve reliance on a verification performed by another employee of the licensee.

■ Furthermore, the affirmative defense in section 123.49(3) does not require a misrepresentation of age to have been made directly to the server. By its terms, it merely requires a misrepresentation of age to have occurred, coupled with reasonable inquiry by the "licensee" (not necessarily the server). We agree with Rock Bottom that the wording of section 129.49(3) is significant because it is framed entirely in terms of whether "the licensee ... made reasonable inquiry." In our view, it goes too far to rule that in order for a "licensee" to make reasonable inquiry, both the order-taker and the server must have personally ascertained that the customer is of age. Otherwise stated, we conclude that under the existing alcoholic

beverage laws in Iowa, it is possible for a liquor licensee to comply with the law without having *both* the order taker *and* the server verify the customer's age.

■ Not only do we believe the administrator's nondelegable duty principle is an illogical interpretation of the statute, but it would impose unintended burdens on licensees. The division of labor that existed on this occasion at Rock Bottom is not uncommon. At places where alcohol is served, such as restaurants and concession stands, beverages may be delivered by someone other than the person who took the order for those beverages. In that circumstance, under the administrator's legal interpretation, the patron would likely have to produce the same identification twice within a matter of minutes. At a community event with various stations, such as a wine tasting, the administrator's legal interpretation would seemingly require a separate identification check to be made at each station. Relying on wristbands would be no more secure than relying on a policy that the order-taker rather than the server should verify the customer's age. In each case, the server of the beverage has not personally taken steps to ascertain the customer's age.[5]

■ Although we differ with the administrator's interpretation of Iowa law, we do not believe that ends this case. The ALJ's proposed decision found that Rock Bottom was not liable under section 123.49(2)(h) and, also, that Rock Bottom had established the section 123.49(3) affirmative defense. In his subsequent review, the ad- ministrator did not question the ALJ's weighing of the evidence; instead, he concluded that "each individual server is responsible under Iowa law to ascertain a person's age before serving or providing an alcoholic beverage to that person." Based on this legal interpretation, which is erroneous in our view, he found that Rock Bottom was liable under section 123.49(2)(h) and could not invoke the section 123.49(3) affirmative defense. We believe the appropriate course of action is to remand this proceeding for the administrator to make further findings under sections 123.49(2)(h) and 123.49(3). The administrator can then determine whether he agrees with the ALJ's determination that "reasonable care" was exercised (section 123.49(2)(h)) and a "reasonable inquiry" was made (section 123.49(3)) in this case. Although we believe the ALJ's findings would serve as an adequate basis for a finding that Rock Bottom exercised reasonable care and/or made a reasonable inquiry in this case, we leave that determination to the administrator in the first instance. In any event, we hold that Iowa law does not specifically require a server to personally verify the patron's age when an order-taker has previously done so.

■ Because we are remanding for further proceedings, it is appropriate to address certain additional arguments advanced by Rock Bottom. Rock Bottom argues that even if a violation did occur, the suspension of its liquor license is contrary to Iowa Administrative Code rule

---

5. Notably, the State consented to the dismissal of the criminal charge brought against Lauer under Iowa Code section 123.49 because a different employee had taken Pierce's order. We agree with the district court that the absence of a criminal conviction does not preclude the imposition of a civil penalty on the licensee (i.e., Rock Bottom). *See* Iowa Code § 123.50(3) (requiring only a conviction or *finding* that a licensee violated section 123.49(2)(h)). But that is not really the issue here. If Lauer's failure to take the order could not be a defense to a civil penalty under section 123.49, as the administrator held, it seems incongruous for the same conduct to serve as the express grounds for dismissal of a criminal charge under the same statute.

185–4.7(8). In its entirety, this section of rule 185–4.7 reads:

> A licensee or permittee, or an agent or employee of a licensee or permittee, who sells, gives or otherwise supplies alcoholic liquor, wine or beer to a person 19 or 20 years old does not subject the license or permit to suspension or revocation. The division or the local authority shall not impose any administrative sanction, including license suspension or revocation, upon a licensee or permittee who is convicted of a violation of Iowa Code section 123.47A, nor shall administrative proceedings pursuant to Iowa Code chapter 17A and Iowa Code section 123.39 be commenced against a licensee or permittee for a violation of Iowa Code section 123.47A.

Iowa Admin. Code r. 185–4.7(8). Rock Bottom seeks to extract the first sentence from the rest of the section, and argues that because Pierce was nineteen years old, its license is not subject to suspension. However, the rule section must be read in its entirety. Considered as a whole, this rule section applied to violations of Iowa Code section 123.47A, a special provision now repealed that pertained to supplying alcoholic beverages to eighteen, nineteen, and twenty-year-olds.[6] Section 123.47A has since been repealed, *see* 1997 Iowa Acts ch. 126, § 54, and Iowa law no longer has any separate provisions relating to the furnishing of alcoholic beverages to persons who are at least eighteen but under twenty-one. Thus, rule 185–4.7(8) is no longer viable.[7] Rather, Iowa Code section 123.50(3)(b) would apply if a violation occurred: "A second violation within two years shall subject the licensee or permittee to a thirty-day suspension and a civil penalty in the amount of one thousand five hundred dollars." Rock Bottom's argument is without merit.

■ Finally, Rock Bottom argues that the penalty for a second violation is not mandatory and the administrator should exercise its discretion in imposing a penalty, if a violation is established. Rock Bottom cites to Iowa Code section 123.39 in support of its argument. Section 123.39 is a general code section that grants the power to suspend a license, stating that the local authority or administrator "may" suspend a license. *See* Iowa Code § 4.1(30) ("The word 'may' confers a power."). However, as noted above, section 123.50(3) provides that a second violation of section 123.49(2)(h) within a two-year period "shall subject the licensee or permittee to a thirty-day suspension and a civil penalty in the amount of one thousand five hundred dollars." The word "shall" imposes a duty on the administrator to implement this specific penalty. Iowa Code § 4.1(30) ("The word 'shall' imposes a duty."). The specific

---

**6.** That provision made it unlawful to serve persons who were eighteen, nineteen, or twenty but limited the penalty for serving persons who were nineteen or twenty to "a fine of not more than fifty dollars." Iowa Code § 123.47A (1995). It further provided that "[t]he penalty provided under this section against a licensee or permittee who violates this section with respect to a person who is age nineteen or twenty is the only penalty which shall be imposed against a licensee or permittee who violates this section." *Id.*

**7.** Rock Bottom points out that the end of rule 185–4.7 states, "This rule is intended to implement Iowa Code subsection 123.49(2)." Thus, Rock Bottom contends rule 185–4.7 as a whole, including subsection 185–4.7(8), applies to the Iowa Code section at issue in this case (section 123.49(2)). While we agree that aspects of rule 185–4.7 are confusing, and that the ABD would be best served by repealing subsection 185–4.7(8), we disagree with Rock Bottom's conclusion. In context 185–4.7(8) clearly applied to former section 123.47A. Its language is entirely consistent with that former Code section, and is entirely inconsistent with section 123.50 now that section 123.47A has been repealed.

code section 123.50 prevails over the general code section 123.39. *State v. Lutgen*, 606 N.W.2d 312, 314 (Iowa 2000) ("[G]eneral and specific statutes should be read together and harmonized, if possible. However, to the extent of an irreconcilable conflict between them, the specific or special statute ordinarily will prevail over the general one."). Therefore, we find Rock Bottom's argument without merit.

## IV. Conclusion.

We reverse the suspension and fine imposed on Rock Bottom and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**